UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL F. HOWARD,

           Petitioner,

           v.                       Case No. 04-C-772

PAMELA WALLACE,

           Respondent.

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Michael F. Howard ("Howard"), a person incarcerated pursuant to a Wisconsin state court judgment, proceeding pro se filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 13, 2004. On December 16, 2004, this court screened Howard's petition pursuant to Rule 4 of the Rules Governing Sections 2254 cases and ordered the respondent to answer the petition. On January 18, 2005, the respondent answered, and on November 20, 2006, Howard filed a reply. The pleadings on Howard's petition are now closed and the matter is ready for resolution. The parties have previously consented to the full jurisdiction of a magistrate judge. Pursuant to Federal Rule of Civil Procedure 25(d)(1), the caption of the case has been updated to replace Daniel J. Benik with Pamela Wallace. Pamela Wallace is the current warden of Stanley Correctional Institution, the institution housing the petitioner.

Howard was convicted in Brown County Circuit Court of four counts of first-degree recklessly endangering safety and one count of second-degree sexual assault of a child pursuant to a no contest plea on December 21, 1998. (Docket No. 1, ¶¶3-4.) Howard was sentenced on May 28, 1999.

On April 14, 2000, Howard filed a post-conviction motion pursuant to Wis. Stat. § 974.06 wherein Howard alleged that his trial counsel was ineffective for failing to object when the government breached the plea agreement. (Docket No. 1, ¶14.) The trial court denied this motion on May 9, 2000, but on May 15, 2001, the Wisconsin Court of Appeals reversed the trial court and ordered the trial court to conduct a hearing as to whether trial counsel was ineffective. (Docket No. 1, ¶15.) On October 29, 2001, following a hearing on the matter, the trial court denied Howard's motion to withdraw his no contest pleas but granted Howard's motion for re-sentencing. On November 21, 2001, Howard was re-sentenced.

On April 26, 2002, Howard filed a motion for post-conviction relief arguing that the sentence was unduly harsh and the recklessly endangering safety counts were multiplicitous. On June 6, 2002, the trial court denied this motion. On April 1, 2003, the Wisconsin Court of Appeals denied Howard's appeal, and on August 13, 2003, the Wisconsin Supreme Court denied review.

Howard then filed a petition for a writ of habeas corpus with the Wisconsin Court of Appeals alleging that his appellate counsel was ineffective in his petition to the Wisconsin Supreme Court. On July 16, 2004, the court of appeals denied this petition for lack of jurisdiction.

On August 3, 2004, Howard filed a petition for habeas corpus with the Wisconsin Supreme Court, and on September 16, 2004, the Wisconsin Supreme Court denied Howard's petition. Howard's present petition was filed on August 13, 2004.

The respondent has admitted that Howard has filed his petition within the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). (Docket No. 9, ¶10.) Nonetheless, in the view of the court, the timeliness of the filing of the petition is questionable, but the court lacks sufficient information to make such a determination. For example, although the parties agree that Howard did not pursue a direct appeal of his conviction, it is unclear how much, if any, of the time between Howard's May 28, 1999 sentencing and his filing of his motion for post-conviction relief on April

2

14, 2000 should be excluded from the one-year time limit under 28 U.S.C. § 2244(d)(2). Additionally, it is unclear whether the time between the Wisconsin Supreme Court's denial of review on August 13, 2003 and Howard's filing a petition for habeas corpus with the Wisconsin Supreme Court on August 3, 2004 should be excluded because, although a petition was filed with the Wisconsin Court of Appeals in the intervening time, it is not clear whether this petition was "properly filed" because the court of appeals dismissed it for a lack of jurisdiction. Even if the time during which Howard's petition was pending in the court of appeals is excludable time, it is unclear when this petition was initially filed.

Nonetheless, in light of the fact that the respondent has agreed that the petition was timely filed, the court declines to exercise its discretion to investigate further whether, in fact, the petition was timely filed. See Day v. McDonough, 547 U.S. 198, ---, 126 S. Ct. 1675, 1684 (2006). Rather, in the interest of avoiding further delay in the resolution of Howard's petition, the court shall turn to the merits of the petition.

## STANDARDS OF REVIEW

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as

3

determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under section 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, --- U.S. ---, 126 S.Ct. 969, 974 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, ----, 125 S.Ct. 2317, 2325 (2005)).

And finally, if the petitioner demonstrates constitutional error under section 2254(d), he still may not be entitled to habeas relief where such error is deemed harmless; that is, the error could not have had a substantial and injurious effect or influence on the jury's verdict. O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (internal citations omitted).

With the § 2254(d) and (e)(1) standards in mind, the court will now turn to the issues raised by Howard.

## ANALYSIS

Howard seeks relief on three grounds. His first ground for relief is that the state court conviction was obtained by a violation of the protection against double jeopardy and was based on multiplicitous charges. Howard's second ground for relief is that his sentence is unduly harsh. Howard's third ground for relief is that, because the prosecution violated the plea agreement, he should have been permitted to withdraw his plea.

**Multiplicity**

Howard argues that his being charged with multiple counts of first degree recklessly endangering safety, Wis. Stat. § 941.30, for shooting into a residence was multiplicitous because there is no indication that he knew how many people were in the residence. Howard argues that he should have been charged under 941.20(3), a statute that specifically deals with drive-by shootings.

The respondent argues that Howard is not entitled to relief on this ground because the decision of the Wisconsin Court of Appeals on this issue was not contrary to and did not involve an unreasonable application of federal law as determined by the United States Supreme Court.

The court of appeals held that when there are different victims involved, there are a corresponding number of distinct crimes. (Ans. Ex. H at 7 (citing State v. Lechner, 217 Wis. 2d 392, 417, 576 N.W.2d 912 (1998)).)

> "Multiplicity is the charging of a single offense in separate counts of an indictment." United States v. Allender, 62 F.3d 909, 912 (7th Cir. 1995) (citing United States v. Gonzalez, 933 F.2d 417, 424 (7th Cir. 1991)). Multiplicity in an indictment exposes a defendant to the threat of receiving multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment. United States v. Conley, 291 F.3d 464, 470 (7th Cir. 2002) (citing Schiro v. Farley, 510 U.S. 222, 229, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994); United States v. Colvin, 276 F.3d 945, 948 (7th Cir. 2002); United States v. Handford, 39 F.3d 731, 735 (7th Cir. 1994)); United States v. Briscoe, 896 F.2d 1476, 1522 (7th Cir. 1990) (quoting United States v. Podell, 869 F.2d 328, 330 (7th Cir. 1989)). "The traditional test of multiplicity determines whether each count requires proof of a fact which the other does not. If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity." Gonzalez, 933 F.2d at 424 (internal citations and quotations omitted); see, e.g., United States v. Muhammad, 120 F.3d 688, 702-03 (7th Cir. 1997) ("The . . . Blockburger test directs our analysis in this regard.") (citing Albernaz v. United States, 450 U.S. 333, 337, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981); Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); Gonzalez, 933 F.2d at 424). "[W]e focus on the statutory elements of the charged offenses, not the overlap in the proof offered to establish them, because a single act may violate several statutes without rendering those statutes identical." Muhammad, 120 F.3d at 703 (citing Albernaz, 450 U.S. at 338; Gore v. United States, 357 U.S. 386, 389, 78 S. Ct. 1280, 2 L. Ed. 2d 1405 (1958)).

United States v. Starks, 472 F.3d 466, 469 (7th Cir. 2006).

"Whoever recklessly endangers another's safety under circumstances which show utter disregard for human's life" commits the crime of first degree recklessly endangering safety. Wis. Stat. § 941.30. Although Howard is correct in pointing out that he shot at a single house, the crime of recklessly endangering safety is a crime against persons, not property. A human victim is an element of the crime. Thus, when there are multiple victims, there may properly be multiple crimes, because each crime requires proof of an element, specifically a distinct victim, that the other crime does not.

There is no requirement that a defendant understand how many persons he is endangering by his conduct. When a person chooses to shoot blindly into a house, he accepts the consequences for those actions. If the safety of four persons is endangered by those bullets, four charges are

6

appropriate no less so than four counts of homicide would be appropriate if those bullets resulted in the death of four persons. Because each count depends upon proof of a distinct element, specifically proof of different victims, it was not multiplicitous for Howard to be charged with four counts of recklessly endangering safety for his firing into a single residence. Further, there is absolutely no requirement under federal law that Howard be charged under Wis. Stat. § 941.20(3)(a) for his conduct. Although based upon the facts presented to this court it appears that Howard's conduct would have amounted to a violation of § 941.20(3)(a), it is also clear that Howard's conduct could also have been properly resulted in four counts under § 941.30. In fact, because both require proof of elements not required in the other, it appears that Howard could have been properly charged and convicted of four counts of recklessly endangering safety, under § 941.30 *and* at least one count of discharging a firearm from a vehicle, under § 941.20(3)(a). It was within the prosecutor's discretion to not pursue these additional charges and instead pursue only the four charges of which the defendant was convicted.

Therefore, the decision of the Wisconsin Court of Appeals was not clearly contrary to and did not involve an unreasonable application of federal law as determined by the United States Supreme Court.

**Unduly Harsh Sentence**

Howard argues that his sentence was unduly harsh because the co-defendant received only five years of probation and one year in jail as a condition of probation.

The respondent argues that Howard fails to set forth a constitutional basis for his claim. To the extent that Howard's reference to <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), may be construed as alleging a constitutional violation, the respondent notes that <u>Blakely</u> was decided after Howard was re-sentenced and new rules of law may not be applied in federal habeas proceedings. Further, to the extent that Howard attempts to make a constitutional argument based upon <u>Blakely</u>,

7

the respondent argues that this claim is procedurally defaulted as a result of Howard's failure to raise it in state court.

To the extent that Howard is arguing that his sentence was unduly harsh because a co-actor received significantly less time, the court finds Howard's claim to be meritless. There is no federal constitutional requirement that sentences be equal among co-actors; a wide variety of factors may result in significant disparities in sentences. A court may impose any sentence that is permitted under the law. It is in this regard that Howard's claim that his sentence was unduly harsh requires additional analysis.

According to the judgment of conviction, (Ans. Ex. E), Howard was sentenced on November 21, 2001 to eight years in prison as to each count in counts one, two, and three, to be served concurrently. As for count four, the only count in the judgment that included the use of a dangerous weapon penalty enhancer, which increases the potential penalty faced by up to four years, see Wis. Stat. § 939.63(1)(a)3, Howard was sentenced to eight years in prison, consecutive to counts one, two, and three, which was imposed and stayed and Howard was placed on ten years of probation consecutive to counts one, two, and three.

On December 21, 1998, the date that Howard committed his crime, first-degree recklessly endangering safety was a class D felony, Wis. Stat. § 941.30 (1997-1998), which was punishable by up to five years in prison and a $10,000 fine, Wis. Stat. § 939.50(3)(d). By way of 1997 Wis. Act. 283, the punishment for a class D felony was amended to permit for punishments up to ten years in prison and a $10,000 fine; however, this Act was not effective until December 31, 1999.

Based upon the information contained in the judgment of conviction, Howard's sentence of eight years in prison as to each count was not permitted by law. The maximum amount of time that Howard could have been sentenced to for each count was five years. If the use of a dangerous weapon penalty enhancer had been applied to each count, Howard's maximum exposure would

8

have been nine years, and thus the sentence would have been permitted by law. However, the judgment of conviction dated May 28, 1999, as well as the judgment of conviction resulting from Howard re-sentencing on November 21, 2001, reflects that the penalty enhancer was applied only to count four. This is factually confusing because, as explained above in regards to Howard's multiplicity argument, Howard's conviction involves his firing multiple shots into a residence as part of a single incident. It is factually inconsistent to say that Howard was armed during some of these contemporaneous acts and not others; it is undisputed that the use of a dangerous weapon penalty enhancer is applicable to all counts. However, simply because the penalty enhancer is applicable does not mean that it need be applied. Particularly when a case is resolved by way of a plea agreement, as this case was, it is not unreasonable to infer that the parties agreed to apply the penalty enhancer to a single count in an effort to reduce the defendant's overall exposure. While this may be a reasonable inference to draw, the court shall turn to the transcript of Howard's plea hearing, (Ans. Ex. O), in order to better determine to what Howard entered a no contest plea.

From a review of the transcript of the plea hearing, it is clear that Howard pled guilty to four counts of first degree recklessly endangering safety with the use of a dangerous weapon penalty enhancer applied to each count.

It is clear that it was Howard's attorney understood that the penalty enhancer would apply to all counts. (See Ans. Ex. O 4:15-18.) The court later asked Howard: "Are you entering the pleas in this matter, namely, pleas of no contest, to four counts of party to the crime of first degree recklessly endangering safety with weapon enhancer and one count of second degree sexual assault in File Number 98-CF-720, are you entering those pleas voluntarily, sir?" (Ans. Ex. O. 7:1-7.) Howard replied, "Yes." (Ans. Ex. O. 7:8.) The court went on to explain that the penalty enhancer would increase the penalty for each count up to four years, (Ans. Ex. O. 7:13-18,) to which Howard again responded that he understood, (Ans. Ex. O. 7:23). Finally, after accepting the defendant's

9

pleas of no contest, the court said, "I will adjudge Mr. Howard guilty of the four counts of party to the crime of first degree recklessly endangering with a weapons enhancer and one count of second degree sexual assault." (Ans. Ex. O. 10:19-23.)

Thus, it is clear that Howard pled guilty to and was convicted of four counts of recklessly endangering safety, each with the use of a dangerous weapon penalty enhancer, and therefore, as to each count, Howard may have been imprisoned for up to nine years. The failure to indicate that the dangerous weapon penalty enhancer applied to each count and not just count four was a clerical error.

Although it is appears that Howard's judgment of conviction contains a clerical error, it is an error for which this court is not able to provide relief. First, it is clear that Howard failed to raise this argument in the state court and therefore has not exhausted his state remedies in regards to this claim. Therefore, because Howard has failed to exhaust the remedies available in state courts, Howard is not entitled to federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). The fact that Howard has failed to raise this issue in state court is further evidenced by the fact that the clerical error has persisted. If the issue was presented in state court, the clerical error most likely would have been promptly corrected upon a review of the transcript of the plea hearing.

Second, even if Howard had exhausted his state court remedies as to this claim, Howard would not be entitled to relief in this court because the clerical error does not result in Howard being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Although it is pursuant to the judgment of conviction that Howard is held in state custody, see Wis. Stat. § 972.13 ("A copy of the judgment shall constitute authority for the sheriff to execute the sentence."), when the judgment of conviction contains a clerical error, the transcript of the relevant court proceeding controls over the inconsistent judgment of conviction. See State v.

10

Prihoda, 2000 WI 123, ¶29, 239 Wis. 2d 244, 618 N.W.2d 857(2000). Having reviewed the transcript of Howard's plea hearing, as explained above, it is clear that Howard pled no contest to four counts of recklessly endangering safety and the use of a dangerous weapon penalty enhancer applied to all counts. Therefore, Howard's sentence was permitted by law.

**Plea Withdrawal**

Following the Court of Appeals' determination that the government breached the plea agreement, the trial court determined that re-sentencing was the proper resolution. Howard argues that he should have been permitted to withdraw his pleas.

The respondent argues that the decision of the Wisconsin Court of Appeals denying Howard's motion to withdraw his plea was not contrary to and did not involve an unreasonable application of federal law as determined by the United States Supreme Court, and thus Howard is not entitled to relief on this basis.

The Wisconsin Court of Appeals held that the withdrawal of a plea is not required simply because the government breached the plea agreement. (Ans. Ex. H.) Relying upon its earlier decision in Howard's case, 2001 WI App 137, 246 Wis. 2d 475, 630 N.W.2d 144, the court held that the choice of remedy when the government materially and substantially breaches a plea agreement is normally left to the discretion of the sentencing court, but there is a preference that the trial court choose re-sentencing rather than vacating the pleas.

The United States Supreme Court has never held that when the government breaches a plea agreement the defendant must be permitted to withdraw his plea. Rather, the Supreme Court has held that it is left to the discretion of the trial court to determine whether re-sentencing or withdrawal of the plea is the appropriate remedy. Santobello v. New York, 404 U.S. 257, 262-63 (1971). In the absence of a clear holding from the United States Supreme Court requiring that a

defendant be permitted to withdraw his plea whenever the government materially and substantially breaches a plea agreement, Howard is not entitled to habeas relief on this ground.

Finally, Howard's request to set a briefing schedule is denied. The parties have had a full opportunity to brief the matters presented in this case. This included the court accepting Howard's reply to the petition's answer nearly two years after the answer was filed. Further briefing will not further assist the court in resolving the issues presented in Howard's petition.

**IT IS THEREFORE ORDERED** that Howard's petition for a writ of habeas corpus is denied and this action is **dismissed**. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 4th day of June, 2007.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge